IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JONATHAN TROY ESTERLEIN, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:17-cv-261-WC
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
Defendant. )

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

On July 30, 2013, Jonathan Troy Esterlein ("Plaintiff") filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on November 21, 2011. Plaintiff's application for SSI was initially denied on December 6, 2013. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on July 27, 2015. Plaintiff was not represented by counsel. After the July hearing, the ALJ ordered that a consultative examination be performed, and a subsequent hearing was held on November 19, 2015, at which time Plaintiff was represented. Following the second hearing, the ALJ issued a decision finding Plaintiff had not been under a disability since November 21, 2011, as defined in the Social Security Act. Plaintiff appealed to the Appeals Council and, on February 27, 2017, the Appeals Council denied review of the ALJ's decision. Accordingly, the ALJ's decision consequently became the final decision of the Commissioner of Social

Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 15); Def.'s Consent to Jurisdiction (Doc. 14).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id.* at 1239-40.

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

[4] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 55 years old at the time of the ALJ's decision. Tr. 23, 159. Plaintiff had completed the eighth grade, and had received specialized job training in auto mechanics. Tr. 22, 190. Plaintiff previously worked in construction; as a forklift driver; as a roofer; as a restaurant cook; and installed electrical plugs. Tr. 191. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since July 30, 2013[.]" Tr. 15. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "disorders of the back; COPD; affective/mood disorders; an organic mental disorder; and a personality disorder." Tr. 15. At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed" in the Social Security Act. Tr. 16. Next, at Step Four, the ALJ articulated Plaintiff's RFC, stating Plaintiff:

> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following additional limitations: can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can perform simple, routine, and repetitive tasks involving only simple work-related decisions and few workplace changes; and can have occasional interactions with supervisors, coworkers, and the general public.

Tr. 18. Having consulted with a VE at the hearing, the ALJ concluded that Plaintiff was unable to perform any past relevant work. Tr. 21. At Step Five, the ALJ determined that, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed[.]" Tr. 22. These jobs included those of a laundry

5

laborer; sweeper/cleaner; and seed cutter. Tr. 22. Finally, based upon the testimony of the VE, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from July 30, 2013, the date the application was filed[.]" Tr. 23.

## IV.  PLAINTIFF'S CLAIMS

Plaintiff presents two issues for the court to consider in its review of the Commissioner's decision: (1) whether substantial evidence supports Plaintiff's RFC when the ALJ did not incorporate certain limitations within the RFC imposed by a State-agency consultative physician to whom the ALJ afforded great weight; and (2) whether the ALJ's finding of Plaintiff's RFC to perform medium work is supported by substantial evidence. Doc. 9 at 1.

## V.  DISCUSSION

**A.  Whether substantial evidence supports Plaintiff's RFC when the ALJ did not incorporate certain limitations within the RFC imposed by a State-agency consultative physician to whom the ALJ afforded great weight.**

In 2013, Dr. Robert Estock, a State-agency consultative physician, evaluated Plaintiff's condition. Tr. 62, 64, 79-84. It is the ALJ's treatment of Dr. Estock's opinion that Plaintiff finds problematic. Plaintiff argues that his RFC is not based upon substantial evidence because, despite affording Dr. Estock's opinion "great weight," the ALJ did not incorporate certain limitations that Dr. Estock imposed upon Plaintiff in Plaintiff's RFC. Doc. 9 at 4-7. Specifically, Plaintiff takes issue with the ALJ's failure to place any limitations on Plaintiff "regarding his attention and concentration capacity" and his potential absenteeism due to his limitations. *Id.* at 6.

6

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. With regards to the ALJ's consideration of non-examining physicians, then,

> [r]egulations require that an ALJ consider the opinions of nonexamining physicians, including state agency [medical] consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See id.* § 404.1527(d)(3)–(4); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(d)(4).

*Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011). Regardless of the weight assigned the opinion of a consultative physician, as part of the ALJ's duty to develop a full and fair record, *Todd v. Heckler,* 736 F.2d 641, 642 (11th Cir. 1984) (citing *Ford v. Sec'y of Health & Human Serv.,* 659 F.2d 66, 69 (5th Cir. 1981)), the ALJ must "make clear the weight accorded to the various testimony considered." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.*

As part of Dr. Estock's evaluation of Plaintiff, Dr. Estock opined that Plaintiff has moderate difficulties maintaining concentration, persistence, or pace. Tr. 80. He also opined that Plaintiff "is able to sustain attention and concentration for 2-hour periods at a

7

time to complete a normal workday at an acceptable pace and schedule." Tr. 82. He further noted that Plaintiff "may require regular, but not excessive work breaks during the work day" and "may be expected to miss 1 to 2 days of work per month due to exacerbation of psychiatric symptoms." Tr. 82. Because the ALJ gave Dr. Estock's opinion "great weight,"[5] Plaintiff argues that reversible error was committed as those portions of Dr. Estock's opinion were rejected without rationale from the ALJ. Doc. 9 at 6.

As set forth above, the ALJ articulated the following RFC for Plaintiff:

[Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following additional limitations: can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can perform simple, routine, and repetitive tasks involving only simple work-related decisions and few workplace changes; and can have occasional interactions with supervisors, coworkers, and the general public.

Tr. 18. Clearly, Plaintiff's RFC does not incorporate a statement from the ALJ regarding Plaintiff's potential to be absent from work due to his psychiatric limitations. Also, while Plaintiff's RFC does not account word-for-word Dr. Estock's opinion regarding Plaintiff's inability to sustain concentration, it does limit Plaintiff to "simple, routine, and repetitive tasks involving only simple work-related decisions and few workplace changes[.]" *See* Tr.

---

[5] When considering Dr. Estock's opinion, the ALJ stated:

> The undersigned has given great weight to the opinions of the State agency psychological consultant (Exhibit B2 A) as [his] opinion is generally consistent with the longitudinal record. That record documents complaints of psychological symptomology that has responded to conservative mental health treatment and that does not require emergency intervention. As a State agency consultant, [Dr. Estock is] a medical expert well versed in programmatic matters.

Tr. 21.

18. Nonetheless, for the reasons discussed below, the undersigned concludes that the ALJ did not err by not incorporating Dr. Estock's opinions within Plaintiff's RFC.

With regards to Plaintiff's potential absenteeism and his need for breaks, the undersigned would note that Dr. Estock's statements are equivocal—i.e., Plaintiff *may* require regular workbreaks and *may* be expected to miss one or two workdays a month. "When a treating physician expresses uncertainty as to his own medical findings, the ALJ has no obligation to defer to his opinion." *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011). If no deference is afforded a treating physician's uncertain opinion, surely the ALJ, here, is not required to adopt *in toto* the uncertain opinions of a consultative physician who did not examine Plaintiff. Accordingly, the undersigned concludes that the ALJ did not err when he did not incorporate Dr. Estock's possible limitations regarding Plaintiff's potential absenteeism into Plaintiff's RFC.

As to Plaintiff's issue with the ALJ's failure to address Dr. Estock's opinion that Plaintiff "is able to sustain attention and concentration for 2-hour periods at a time to complete a normal workday at an acceptable pace and schedule[,]" the undersigned concludes that, although not in the same wording, the ALJ does account for Dr. Estock's limitations in Plaintiff's ability to maintain concentration, persistence, and pace. Indeed, the ALJ limited Plaintiff's engagement to "simple, routine, repetitive tasks involving only simple work-related decisions and few workplace changes[.]" Tr. 18. Thus, the undersigned concludes that, although he did not use Dr. Estock's language, the ALJ appropriately accounted for Plaintiff's limitations in persistence, concentration, and pace within Plaintiff's RFC.

Although seemingly a secondary argument, Plaintiff also asserts that his RFC is not based upon substantial evidence because the ALJ failed to discuss and/or discredit the opinion of Dr. Kendall Jordan and other medical records from Spectracare Health Systems. Doc. 9 at 6-7. The undersigned will address the ALJ's treatment of both pieces of evidence.

Regarding the medical evidence from Spectracare, Plaintiff argues that the following portions of those records were insufficiently addressed by the ALJ: (1) Plaintiff "presents with extreme irritability, decreased need for sleep, inflated-self-esteem, was easily distracted in session," Tr. 603; and (2) Dr. Fernando Lopez diagnosed Plaintiff with Bipolar II Disorder and Antisocial Personality Disorder, Tr. 587. While the regulations require that the ALJ consider all the evidence in the record, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995)). Here, it is clear that the ALJ did consider the Spectracare evidence, as the ALJ noted that Plaintiff "began seeking care from a mental health care provider (Exhibit B13F/13)[6]," and that those records indicated that Plaintiff did not like being around others, was distractible and irritable on examination, and received diagnoses of bipolar disorder and antisocial personality disorder. Tr. 18. It is obvious, then, that the ALJ did not broadly reject the evidence from Spectracare, but instead considered it when

---

[6] Exhibit B13F is Plaintiff's medical records from August 5, 2015, through October 15, 2015, from Spectracare Health Systems. Tr. 586-604.

formulating Plaintiff's RFC. *See Cowart*, 662 F.2d at 735 (noting that the ALJ must do more than make a general statement that he "has carefully considered all of the testimony . . . and exhibits . . . and has given weight to each as he feels should be properly accorded to it"). The ALJ was required to do no more, as the undersigned concludes that the reference to the records constitutes more than a broad rejection of the evidence.

As to the opinion of Dr. Kendall Jordan, a consultative physician, the ALJ did not assign the evidence any particular weight. Within the medical evidence from Dr. Jordan, Dr. Jordan opines that "[i]n terms of vocation, the claimant's ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a moderate degree due to psychiatric issues." Tr. 350. However, to the extent that the ALJ had a duty to assign that opinion a particular weight and discuss his reasoning for such an assignment, the undersigned concludes that his failure to do so is harmless error. The ALJ's opinion explicitly states that he afforded the opinion of Dr. Banner "great weight" with regards to Dr. Banner's opinion that Plaintiff had "no more than moderate psychological functional limitations." Tr. 21. Clearly, then, Dr. Jordan's findings do not contradict those of Dr. Banner, making the ALJ's failure to explicitly address Dr. Jordan's opinion harmless error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (holding that an ALJ's failure to state what weight is given to the opinion of a physician was harmless error where the opinion did not otherwise contradict the ALJ's findings and was consistent with an opinion from another physician whom the ALJ afforded substantial weight).

In summary, the undersigned finds that the ALJ did not err by not incorporating certain limitations imposed by Dr. Estock within Plaintiff's RFC despite affording Dr.

Estock's opinion great weight. The undersigned also finds that the ALJ did not commit reversible error by failing to discuss and/or discredit the medical evidence from Dr. Jordan and from Spectracare Health Clinic. Accordingly, the undersigned will proceed to address Plaintiff's second argument.

**B.     Whether the ALJ's finding of Plaintiff's RFC to perform medium work is supported by substantial evidence.**

Plaintiff argues that the ALJ's finding that he can perform medium work is not supported by substantial evidence. Doc. 9 at 8-10. As stated above, the ALJ determined that Plaintiff could perform medium work with the following limitations: "can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl . . ." Tr. 18. Plaintiff argues that there "is no evidence from a physician that indicates that [Plaintiff] is capable of performing medium work[,]" even with limitations imposed. Doc. 9 at 8-9. Plaintiff further argues there is evidence that actually contradicts the conclusion that Plaintiff can perform medium work. *Id*. He points to the opinion of Dr. Sam Banner, D.O., a consultative physician whom the ALJ afforded "limited weight" with regards to his opinion about Plaintiff's physical limitations. Tr. 21, 557. Although Dr. Banner opined that Plaintiff was limited to a range of sedentary to light exertion, the ALJ found that the physical limitations assessed by Dr. Banner were skewed by the fact that Plaintiff had recently experienced a cerebrovascular event. Tr. 21. Despite giving little weight to the physical limitations imposed by Dr. Banner (and providing reasoning for doing so), the ALJ afforded great weight to Dr. Banner's opinions regarding Plaintiff's psychological limitations. Tr. 21. Plaintiff argues, therefore, that the ALJ erred

by focusing "on one aspect of Dr. Banner's opinion while disregarding other aspects." Doc. 9 at 9. Additionally, although the argument is mentioned only in passing, Plaintiff asserts that "the ALJ failed to consider the role of [Plaintiff's] other diagnoses given by Dr. Banner and how such diagnoses may have contributed to the limitations placed on [Plaintiff] by Dr. Banner."[7] *Id*.

As an initial note, there is no requirement for the ALJ to rely upon a physician's opinion when determining Plaintiff's RFC, as such an assessment is reserved to the Commissioner. *See* Doc. 12 at 11; 20 C.F.R. § 416.927(d)(2); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (holding that, despite the ALJ's rejection of a physical capacities evaluation from the claimant's treating physician, there was evidence from the claimant's doctors sufficient to support the ALJ's finding that the claimant could perform light work). Whereas, here, the ALJ has examined Dr. Banner's opinion and has provided his reasoning for relying upon portions of the opinion and not others—i.e., that Plaintiff's exacerbation of physical symptoms at the time he saw Dr. Banner was likely due to the fact that Plaintiff had recently experienced a cerebrovascular event—the undersigned finds that the ALJ has properly reviewed the medical evidence submitted by Dr. Banner, explained clearly the weight it should receive, and provided reasoning for his conclusion. Therefore, the fact that the ALJ may have relied upon one portion of Dr. Banner's opinion

---

[7] To the extent that it may be argued that Plaintiff is presenting this as a separate argument before the court requiring remand, the undersigned concludes that Plaintiff has failed to support such an argument and that it is, therefore, abandoned. *See Rowe v. Schreiber,* 139 F.3d 1381, 1382 n. 1 (11th Cir. 1998) (explaining that an issue may be deemed abandoned where a party only mentions it in passing, without providing substantive argument in support).

and not another is unavailing, especially considering that the ALJ had no duty to rely upon *any* of Dr. Banner's opinion in formulating Plaintiff's RFC.

Plaintiff's reliance upon *Thomason v. Barnhart*, a Southern District of Alabama case, does not persuade the undersigned otherwise. 344 F. Supp. 2d 1326 (S.D. Ala. 2001). In *Thomason*, the court concluded that the ALJ had impermissibly substituted his judgment that Thomason, a woman of advanced age with arthritis and other severe impairments, could perform medium work for the judgment of a qualified physician. *Id.* at 1328, 1329. In remanding the case back to the Commissioner, the court noted that no physician had concluded that Thomason was capable of performing medium work, nor was there any evidence in the record to suggest such a conclusion. *Id*. at 1328-29. In fact, the court noted evidence to the contrary, namely testimony from Thomason that she was unable to lift more than five pounds. *Id*.

Based upon *Thomason*, Plaintiff argues that the ALJ's determination that he can perform medium work, albeit with limitations, is also not supported by substantial evidence, as no medical opinions in the record support that conclusion. Doc. 9 at 7-10. However, important distinctions lie between *Thomason* and the case at hand. In *Thomason,* the court required remand because there was no medical opinion stating that Thomason could perform medium work *and* there was no other evidence in the record suggesting that Thomason could perform medium work. *Thomason*, 344 F. Supp. 2d at 1328, 1329. As noted above, the court pointed to evidence contrary to the conclusion that Thomason was able to perform medium work when it referenced Thomason's testimony that she was unable to lift more than five pounds and had no strength. And, there is no indication—at

least within the *Thomason* opinion—that the ALJ found Thomason's testimony regarding her symptoms not credible. Here, however, the ALJ noted that, although Plaintiff alleges "debilitating back pain concerns," the "evidence of record fails to substantiate these claims." Tr. 20. The ALJ pointed to evidence that, despite claims of back pain since the age of seven, Plaintiff "has engaged in work requiring lifting of 100 pounds or more[.]" Tr. 20. He also pointed to Plaintiff's generally unremarkable medical history concerning his back disorders, *see* Tr. 19 (discussing the medical evidence regarding Plaintiff's back disorders and the reports of consultative examinations regarding this severe limitation), and concluded that "[o]bjective imaging has revealed minimal abnormalities and his physical examinations have revealed mild deficits[,]" Tr. 20. Therefore, while there may not be a specific medical opinion stating that Plaintiff can perform medium work, the undersigned cannot conclude, like the *Thomason* court, that the record as a whole is lacking evidence that Plaintiff can perform medium work.

Thus, after an independent review of the record, the undersigned finds that the ALJ had substantial evidence, even without a medical opinion stating specifically so, that Plaintiff could perform a full range of less than medium work. Accordingly, Plaintiff's argument is unavailing.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 15th day of June, 2018.

                                        /s/ Wallace Capel, Jr.
                                        CHIEF UNITED STATES MAGISTRATE JUDGE